1

2

3

4

5

6

7

8
                    UNITED STATES DISTRICT COURT

9
              FOR THE EASTERN DISTRICT OF CALIFORNIA

10 ANDREW VARGAS,
                                  NO. CIV. S-10-3130 LKK/GGH
11
            Plaintiff,
12
       v.
13                                      O R D E R
   BP AMERICA, INC., JEFF
14 FERIS, JILL GEORGIKAS,
   STEVE HONIG, TOM HORN,
15 DEB PORTELLO, WAYNE MALIK,
   and DOES 1 through 50,
16 inclusive,

17          Defendants.

18 _____/

19      Plaintiff, a former gasoline truck driver for BP America,

20 brings a claim of wrongful termination in violation of public

21 policy and breach of the terms of his employment contract. Pending

22 before the court is defendant's motion for judgment on the

23 pleadings as to all of the causes of action. For the reasons that

24 follow, defendant's motion is granted. Plaintiff is granted leave

25 to amend his complaint.

26

                                  1

1                              **I.  Background**

2 **A.  Allegations**

3       Plaintiff  Andrew  Vargas   was  employed  as  a  gasoline  truck

4 driver  from  1988  until  the  date  of  his  termination,  June  1,  2009.

5 In  2000,  his  employer,  Atlantic  Richfield  Company,  was  acquired  by

6 defendant  BP  America  Inc.  ("BP").  During  his  employment,  an

7 employee  handbook  described  the  rules  and  policies  that  governed

8 the  workplace,  including  provisions  for  the  protection  of  the

9 health  and  safety  of  employees,  the  public,  and  the  environment.

10 Plaintiff  alleges  that  defendant  instructed  him  on  numerous

11 occasions  to  violate  the  terms  of  the  employee  handbook  by,  among

12 other  things,  concealing  the  spilling  of  more  than  five  gallons  of

13 gasoline  that  occurred  while  transferring  gasoline  from  delivery

14 tankers  to  the  gas  stations.  Plaintiff  alleges  that  some  of  the

15 rules  in  the  employee  handbook  were  intended  to  protect  the  public

16 and  the  environment.  Plaintiff  also  claims  that  defendant  coerced

17 plaintiff  and  other  drivers  to  violate  various  other  safety  rules,

18 including  operating  trucks  that  were  improperly  balanced  and  posed

19 danger  of  tipping  over,  delivering  gasoline  to  storage  tanks  in

20 poor  safety  condition,  transporting  "split  loads"  under  hazardous

21 conditions,  and  bypassing  the  "skully  device."[1]  Plaintiff  also

22 alleges  that  BP  instituted  a  program  that  required  drivers  to  take

23 their  meal  break  while  waiting  to  unload  their  trucks,  which  occurs

24 near  the  loading  rack.  Plaintiff  alleges  that  this  condition

25

26       [1] A  safety  device  used  to  prevent  over-filling  of  gasoline
   when  delivering  to  gas  stations.

1 violates CalOSHA.

2      Plaintiff alleges that at one point he was threatened with
3 loss of hours if he did not do as instructed. He also alleges that
4 he complained from time to time about safety hazards, and that he
5 gave testimony at a labor board hearing over unfair labor
6 practices.[2] He claims that defendant retaliated against him in
7 numerous ways including requiring him to do tasks that would
8 exacerbate his back injury, and requiring him to work in high
9 temperatures while taking medication that made him sensitive to
10 heat.[3] Plaintiff alleges that defendants terminated him on June 1,
11 2009, as part of a retaliatory course of conduct, and without just
12 cause.

13 **B.  Procedural Background**

14      Plaintiff filed a complaint in the California Superior Court
15 alleging wrongful termination in violation of public policy, breach
16 of employment contract, breach of implied covenant not to terminate
17 except with good cause, breach of implied covenant of good faith
18 and fair dealing, and intentional infliction of emotional distress.
19 The complaint named as defendants BP America, Inc., Jeff Ferris,
20 Jill Georgikas, Steve Honig, Tom Horn, Deb Portello, Wayne Malik,
21 and Does 1 through 50. Plaintiff alleged that named defendants were
22 "shareholders, supervisors, managers and/or officers" of BP.

23 _____

24      [2] He does not allege whether this occurred before or after his
   termination.
25
      [3] He does not allege who made him do these tasks, or whether
26 anyone at BP knew of his medical conditions.

1 Complaint 2, ECF No. 1 ("Compl.").

2      On November 19, 2010, defendants removed the case to this

3 court. On March 4, 2011, the court issued an order dismissing the

4 individual named plaintiffs, leaving only BP as defendant. Order,

5 ECF No. 12.

6      On March 25, 2011 defendants filed a motion for judgment on

7 the pleadings pursuant to Fed. R. Civ. P. 12(c). Motion, ECF No. 15

8 ("Mot."). Plaintiff opposes the motion, but has voluntarily

9 withdrawn his fifth cause of action for intentional infliction of

10 emotional distress. Opposition, 22, ECF No. 16.

11                **II. Standard for Judgment on the Pleadings**

12      A motion for judgment on the pleadings may be brought "[a]fter

13 the pleadings are closed but within such time as to not delay the

14 trial." Fed. R. Civ. P. 12(c). All allegations of fact by the party

15 opposing a motion for judgment on the pleadings are accepted as

16 true. Doleman v. Meiji Mut. Life Ins. Co., 727 F.2d 1480, 1482 (9th

17 Cir. 1984). A "dismissal on the pleadings for failure to state a

18 claim is proper only if 'the movant clearly establishes that no

19 material issue of fact remains to be resolved and that he is

20 entitled to judgment as a matter of law.'" Id. (quoting 5 C. Wright

21 & A. Miller, Federal Practice and Procedure: Civil § 1368, at 690

22 (1969)); see also McGlinchy v. Shell Chemical Co., 845 F.2d 802,

23 810 (9th Cir. 1988).

24      When a Rule 12(c) motion is used to raise the defense of

25 failure to state a claim, however, the motion is subject to the

26 same test as a motion under Rule 12(b)(6). McGlinchy, 845 F.2d at

4

1 810; Aldabe v. Aldabe, 616 F.2d 1089, 1093 (9th Cir. 1989). Thus,

2 the motion will be granted only if the movant establishes that "no

3 relief could be granted under any set of facts that could be proven

4 consistent with the allegations." Hishon v. King & Spalding, 467

5 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); see also Conley

6 v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957);

7 Newman v. Universal Pictures, 813 F.2d 1519, 1521-22 (9th Cir.

8 1987). The court must accept all material allegations of the

9 complaint as true and all doubts must be resolved in the light most

10 favorable to the plaintiff. N.L. Indus. Inc. v. Kaplan, 792 F.2d

11 896, 898 (9th Cir. 1986).

12      "Courts have discretion to grant leave to amend in conjunction

13 with 12(c) motions, and may dismiss causes of action rather than

14 grant judgment." Moran v. Peralta Community College Dist., 825 F.

15 Supp. 891, 893 (N.D. Cal. 1993). See also

16 Canam Steel Corp. v. Mayo, 2009 U.S. Dist. LEXIS 77136 (E.D. Cal.

17 2009).

18                          **III. Analysis**

19 **A. First Cause of Action**:

20 **1) Termination in Violation of Public Policy**

21      Plaintiff alleges as his first cause of action that his

22 termination violates the state's public policy. Compl. 13. In

23 California, a claim of wrongful termination in contravention of

24 public policy requires some basis in policy that is delineated in

25 a constitutional or statutory provision. Gantt v. Sentry Ins., 824

26 P.2d 680, 684 (Cal. 1992). The public policy, however, may also be

1  enunciated in an administrative regulation.  Green v. Ralee Eng'g

2  Co., 960 P.2d 1046, 1051 (Cal. 1998). The policy violated must be

3  fundamental and affect a public interest rather than only personal

4  or proprietary interests. Id.; Gantt, 824 P.2d at 684. The language

5  of the law or constitutional provision need not prohibit the exact

6  conduct alleged, but must express a "clearly mandated public

7  policy" that is contravened by the alleged conduct. Id. at 1061.

8  "[T]he policy must be public in that it affects society at large

9  rather than the individual, must have been articulated at the time

10  of discharge, and must be fundamental and substantial." Id. at 1051

11  (internal quotations omitted); See also Carter v. Escondido Union

12  High School District, 56 Cal. Rptr. 3d 262, 266 (Cal. Ct. App.

13  2007). Mere violation of an employer's own policies, is not

14  protected by the public policy doctrine. "The tort of wrongful

15  discharge is not a vehicle for enforcement of an employer's

16  internal policies or the provisions of its agreements with others."

17  Turner v. Anheuser-Busch, Inc., 876 P.2d 1022, 1033 (Cal. 1994).[4]

18      In his complaint, plaintiff asserts that BP is subject to

19  "laws and regulations" that are "intended to protect the general

20  public from safety hazards." Compl., 4. Defendant argues that

21  plaintiff has failed to state a claim for  wrongful termination

22  because  plaintiff  has  not  pled  the  specific  statutory,

23  constitutional, or regulatory basis for the tort.

24

25      [4]Of course if the employer's policy reflects a public policy
    as defined above, the employer's policy may be relevant to
26  demonstrate intentional conduct for purposes of measuring damages.

1    It is indeed correct that under state law defendant would
2  likely prevail on this point. A plaintiff's "failure to identify a
3  statutory or constitutional policy that would be thwarted by his
4  alleged discharge dooms his cause of action." Turner, 876 P.2d at
5  1033. However, federal law governs pleading requirements    in
6  federal court, Tribble v. Raytheon Co., 2011 U.S. App. Lexis 2895
7  (9th Cir. 2011), and thus notice pleading applies. Fed. R. Civ.
8  Proc. 8(a). Under federal law no citation to specific authority is
9  ordinarily required to be pled. Alvarez v. Hill, 518 F.3d 1152,
10 1155 (9th Cir. 2008)( "Notice pleading requires the plaintiff to
11 set forth in his complaint claims for relief, not causes of action,
12 statutes or legal theories.") The court concludes that plaintiff's
13 complaint complies with the notice pleading standards in Fed. R.
14 Civ. P. 8(a). By alleging that defendant "was subject to numerous
15 and various laws . . . intended to protect the general public from
16 safety hazards inherent in the storage, transport, delivery,
17 pumping, disposal, and other handling of large quantities of highly
18 toxic, flammable and volatile gasoline fumes," and "were intended
19 to protect the environment from damage," and "were promulgated
20 and/or enforced by various governmental agencies including but not
21 limited to the United States Congress, Environmental Protection
22 Agency, [and] the State of California . . ." plaintiff has provided
23 sufficient notice to defendant as to the public policy basis for
24 his wrongful termination claim. Such notice is all that is required
25
26

7

1  under the Federal Rules of Civil Procedure.[5]

2  **2) Requirement to Plead a Nexus**

3  Defendant asserts that plaintiff's first cause of action fails
4  to demonstrate a nexus between the protected activity and the
5  termination. Mot. 9. A claim for wrongful discharge typically
6  arises when "an employer retaliates against an employee for (1)
7  refusing to violate a statute, (2) performing a statutory
8  obligation, (3) exercising a statutory right or privilege, (4)
9  reporting an alleged violation of a statute of public importance."
10  <u>Turner</u>, 876 P.2d at 1033 (internal citations omitted). Nonetheless,
11  in making a claim of termination in violation of public policy,
12  plaintiff must demonstrate a nexus between the alleged policy
13  violation and the termination. Turner, 876 P.2d at 1031.

14  Defendant points out that there was a twenty-eight month gap
15  between Vargas' internal complaint about management's unsafe
16  activity and his termination. Def.'s Mot. 11. Plaintiff counters
17  that the employer engaged in a "course of conduct" in response to
18  his internal complaint, which culminated in his termination on June
19  1, 2009. Opp'n 19. Plaintiff alleges that prior to his discharge,
20  defendants retaliated against him by requiring him to (a) pick up
21  debris on one occasion despite the fact that he had been medically
22  limited from bending and stooping; (b)pull up weeds on another

23  ───────────────

24  [5] Ordinarily, BP would file an interrogatory requiring
   plaintiff to enumerate the various bases of the claimed violation
25  of public policy. In the name of efficiency plaintiff may desire
   to plead them in an amended complaint, however, for the reasons
26  noted above he need not do so.

8

1  occasion despite a back injury;(c) scrape pigeon excrement off the

2  sidewalk even though he complained about his back injury and

3  airborne germs; (d) work in high temperatures including 100 degrees

4  on one occasion despite heat sensitivity due to medication; and by

5  instructing him (e) not to talk to other drivers on another

6  occasion. Compl. 9, 10.

7       It appears to the court that under the traditional standards

8  relative to pleading plaintiff's complaint would suffice. Under the

9  newly adopted standards for pleading, however, plaintiff's

10 complaint is insufficient. Plaintiff has failed to demonstrate that

11 the retaliation theory is plausible. See Ashcroft v. Iqbal, 129 S.

12 Ct. 1937, 1949 (2009). Plaintiff did not allege approximate dates

13 for any of the incidents alleged to constitute a course of conduct,

14 nor that there was any connection between his conduct and the

15 alleged retaliation. At minimum, in order to adequately plead this

16 theory, plaintiff must at least indicate that the retaliatory

17 conduct began after the alleged protected activity. Without

18 approximate dates attached to the alleged retaliatory incidents,

19 the court is not able to draw an inference that the termination is

20 linked to his protected activity.

21      Defendant's motion for judgement on the pleadings is GRANTED

22 with respect to the claim for termination in violation of public

23 policy. The First Claim for relief is DISMISSED without prejudice.

24 Plaintiff is granted leave to amend the complaint.

25 **B      Second Cause of Action: Breach of Employment Contract**

26      As his second cause of action, plaintiff alleges that he was

1 employed pursuant to an "oral and/or implied agreement that
2 Defendants would continue Plaintiff's employment for an indefinite
3 period of time into the future so long as plaintiff fulfilled his
4 duties and obligations under the employment agreement, and that
5 plaintiff's employment would not be terminated except for good
6 cause." Compl, 15. He claims that on June 1, 2009, he was
7 terminated without cause, in violation of his employment contract.
8 Id. Defendant contends that plaintiff has failed to show the
9 existence of an implied contract. Mot. 12.

10       In California, employment is presumed to be at-will.
11 California Labor Code § 2922. The presumption of an at-will
12 contract may be overcome where the parties' conduct demonstrates an
13 implied promise not to terminate without good cause. Guz v. Bechtel
14 National, 8 P.3d 1089, 1100 (Cal. 2000). The existence of an
15 implied agreement is determined by looking at the totality of
16 circumstances. Id. Defendant is correct in observing that plaintiff
17 has failed to specify "any person or persons who entered into an
18 alleged agreement with him," or that such person had the authority
19 to do so. Mot. 13. Neither has plaintiff specified any policies,
20 practices, or other conduct which might plausibly give rise to an
21 implied promise not to terminate without cause.

22       Contrary to defendant's insistence, plaintiff need not *prove*
23 the existence of the implied agreement at the pleading stage.
24 However, plaintiff's bare assertion that an implied agreement
25 existed is conclusory and insufficient. See Iqbal, 129 S. Ct. at
26 1949-50. Basic facts such as the names or titles of relevant

1 parties and the type of statements or conduct which is alleged to

2 give rise to the mutual agreement should be set forth in order to

3 give defendant fair notice of the grounds of the claim, and to make

4 the existence of a mutual agreement plausible. See Bell Atlantic

5 Corp. v. Twombly, 550 U.S. 544, 555 (2007).

6      Because plaintiff has failed to allege such, defendant's

7 motion is GRANTED with respect to the second cause of action.

8 Plaintiff is granted leave to amend the complaint.

9 **C. Third Cause of Action: Breach of Implied Covenant not to**

10 **Terminate**

11      Plaintiff's third cause of action alleges that plaintiff was

12 "reasonably assured by" defendant's statements and conduct that he

13 would not be terminated without cause, and that "there existed an

14 implied covenant" to that effect. Compl. 16. This claim suffers

15 from the same deficiencies as the second cause of action described

16 above. As defendants point out, the third cause of action is

17 duplicative of the second cause of action. Mot. 14. The plaintiff

18 does not set forth any facts that would distinguish the alleged

19 covenant not to terminate without cause, from a contract not to

20 terminate without cause. In his opposition to the present motion,

21 plaintiff acknowledged that this cause of action is duplicative of

22 another, and expressed a desire to consolidate the complaint.

23 Opp'n, 2. The defendant's motion is therefore GRANTED as to the

24 third cause of action.

25 **D. Fourth Cause of Action: Breach of Implied Covenant of Good Faith**

26 **and Fair Dealing**

1    Plaintiff's fourth cause of action seeks recovery for breach
2  of the covenant of good faith and fair dealing. Compl. 17.
3  Defendant asserts that the claim is impermissibly duplicative of
4  the second cause of action. Mot. 14.

5    A plaintiff cannot state a claim for breach of the implied
6  covenants due to a termination where there is no promise not to
7  terminate without cause. "With regard to an at-will employment
8  relationship, breach of the implied covenant cannot logically be
9  based on a claim that a discharge was made without good cause. If
10 such an interpretation applied, then at-will contracts would be
11 transmuted into contracts requiring good cause for termination."
12 Foley v. Interactive Data Corp., 765 P.2d 373, 400 n.39. (Cal.
13 1988). As discussed above, plaintiff has not sufficiently plead
14 that he had an employment agreement that bound defendant to
15 terminate him only for cause.

16   If plaintiff is able to plead sufficient facts in his second
17 cause of action, plaintiff may make out a claim for violation of
18 the implied covenants on the facts alleged. Although every contract
19 imposes a good faith duty on its parties, a claim for breach of the
20 implied covenants is distinguishable from a breach of contract
21 claim in that the implied covenants provide a "safety valve to
22 which judges may turn to fill gaps and qualify or limit rights and
23 duties otherwise arising under rules of law and specific contract
24 language." Foley, 765 P.2d at 389. (internal quotations omitted).
25 The implied covenants prevent a party from acting in bad faith to
26 frustrate the purpose of the mutual agreement. Guz, 8 P.3d at 1112

1   n.18. A breach of implied covenants claim may not, however, enforce

2   obligations beyond the terms of the agreement. Id. at 1112.

3        Here plaintiff asserts that the employer's stated grounds for

4   his termination were inadequate and pretextual. Compl. 18. He

5   claims that the real reason for his termination was retaliation for

6   his complaints and refusal to participate in "wrongful illegal

7   action." Id. Plaintiff alleges that the employer engaged in

8   discriminatory conduct intended to frustrate plaintiff's ability to

9   receive the benefits of his asserted employment contract. Compl. 9,

10  10.

11       Because plaintiff has not sufficiently pled the existence of

12  an employment agreement–a prerequisite for plaintiff's fourth cause

13  of action–defendant's motion is GRANTED with respect to the fourth

14  cause of action.

15  **E. Plaintiff's Fifth Cause of Action**

16       In his opposition, plaintiff voluntarily dismissed his fifth

17  cause of action for intentional infliction of emotional distress.

18  Opp'n, 22. Accordingly, the fifth cause of action is DISMISSED with

19  prejudice.

20                          **IV. Conclusion**

21      For the foregoing reasons, the court ORDERS as follows:

22           [1] Plaintiff's first, second, and fourth causes of

23               action are dismissed with leave to amend, which plaintiff

24               shall exercise within twenty one days.

25  ////

26  ////

                                    13

1        [2]  Plaintiff's  third  and  fifth  causes  of  action  are

2            dismissed with prejudice.

3    IT IS SO ORDERED.

4    DATED:  April 26, 2011.

5

6

7    _____
     LAWRENCE K. KARLTON
     SENIOR JUDGE
8    UNITED STATES DISTRICT COURT

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

                              14